**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**SHANNON LEE HOLLAND,**

      **Plaintiff,**

**v.**                    **Case No.: 3:19-cv-00701**

**ANDREW M. SAUL,**
**Commissioner of the**
**Social Security Administration,**

      **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

This action seeks a review of the decision of the Commissioner of the Social Security Administration *(*hereinafter "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are Plaintiff's request for judgment in her favor, contained in the Memorandum in Support of Judgment on the Pleadings, and the Commissioner's Brief in Support of Defendant's Decision, requesting judgment in his favor. (ECF Nos. 6, 7).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's request for

judgment on the pleadings be **DENIED**; the Commissioner's request for judgment on the pleadings be **GRANTED**; the Commissioner's decision be **AFFIRMED**; and this case be **DISMISSED** and removed from the docket of the Court.

## I.    Procedural History

On September 19, 2016, Shannon Lee Holland ("Claimant"), completed applications for DIB and SSI, alleging disability onset dates of January 1, 2015 and December 8, 2015, respectively, due to "back problems, [deteriorated] disc, herniated disc, and bulging disc." (Tr. at 187-97, 227). The Social Security Administration ("SSA") denied Claimant's applications initially and upon reconsideration. (Tr. at 18). Claimant then filed a request for an administrative hearing, which was held on August 21, 2018 before the Honorable Jerry Meade, Administrative Law Judge. (Tr. at 36-55). By written decision dated September 27, 2018, the ALJ found that Claimant was not disabled as defined by the Social Security Act. (Tr. at 15-35). The ALJ's decision became the final decision of the Commissioner on August 27, 2019 when the Appeals Council denied Claimant's request for review. (Tr. 1-6).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1). The Commissioner subsequently filed an Answer opposing Claimant's complaint and a Transcript of the Administrative Proceedings. (ECF Nos. 4, 5). Claimant filed a Memorandum in Support of Judgment on the Pleadings, and the Commissioner filed a Brief in Support of Defendant's Decision. (ECF Nos. 6, 7). Consequently, the matter is fully briefed and ready for resolution.

## II.    Claimant's Background

Claimant was 42 years old on his alleged onset date and 45 years old on the date of the ALJ's decision. He has the equivalent of a high school education; communicates

2

in English; and previously worked as a fire watch in the construction industry, millwright in the steel industry, and landscaping technician. (Tr. at 52, 226, 228).

### III.    <u>Summary of ALJ's Decision</u>

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* §§ 404.1520(d), 416.920(d). If so, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this

3

determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* §§ 404.1520a(b), 416.920a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. §§ 404.1520a(c), 416.920a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* §§ 404.1520a(d), 416.920a(d). A rating of "none" or "mild" in the four functional areas of

4

understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for disability insurance benefits through March 31, 2021. (Tr. at 20, Finding No. 1). At the first step of the sequential evaluation, the ALJ found that Claimant engaged in substantial gainful activity from his alleged onset date on January 1, 2015 through January 31, 2016. (Tr. at 21, Finding No. 2). However, the ALJ confirmed that Claimant had not engaged in substantial gainful activity from February 1, 2016 through the date

of the ALJ's decision. (*Id.*, Finding No. 3). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: obesity, degenerative disc disease of the cervical and lumbar spine, and carpal tunnel syndrome of the right hand. (*Id.*, Finding No. 4). The ALJ also considered Claimant's tinnitus, somatic symptom disorder, adjustment disorder, and major depressive disorder, but found that the impairments were non-severe. (Tr. at 21-24).

Under the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 24, Finding No. 5). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs. He can occasionally balance, stoop, kneel, crouch, and crawl. He must avoid concentrated exposure to extreme cold; wetness; noise; vibrations; and hazards such as moving machinery and unprotected heights. The claimant can frequently (but not repetitively) handle and finger with the right hand. He needs a sit/stand option at 30-minute intervals.

(Tr. at 24-28, Finding No. 6).

At the fourth step, the ALJ determined that Claimant could not perform his past relevant work. (Tr. at 28, Finding No. 7). Therefore, the ALJ reviewed Claimant's prior work experience, age, and education in combination with Claimant's RFC to determine his ability to engage in other substantial gainful activity. (Tr. at 28-30, Finding Nos. 8 through 11). The ALJ considered that (1) Claimant was born in 1972 and was defined as a younger individual on the alleged disability onset date; (2) Claimant had at least a high school education and could communicate in English; and (3) transferability of job skills was not an issue because the Medical-Vocational Rules supported a finding that

Claimant was "not disabled," regardless of Claimant's transferable job skills. (Tr. at 28-29, Finding Nos. 8 through 10). Taking into account these factors, Claimant's RFC, and the testimony of a vocational expert ("VE"), the ALJ determined that Claimant could perform other jobs that existed in significant numbers in the national economy, including work as a price marker or routing clerk at the light exertional level, or an inspector or sorter at the sedentary exertional level. (Tr. at 29-30, Finding No. 11). Consequently, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 30, Finding No. 12).

## IV.   Claimant's Challenges to the Commissioner's Decision

Claimant raises two challenges to the Commissioner's decision. First, Claimant argues that the ALJ erred in finding that his tinnitus and mental impairments were non-severe at step two of the sequential evaluation. (ECF No. 6 at 4). Second, Claimant contends that the ALJ "should have tendered interrogatories" to his primary care physician, David Whitmore, D.O., and the consulting examining sources, Kip Beard, M.D., and Angela Null, M.S., "to inquire as to what physical and mental functional limitations" he suffers. (*Id.*).

In response to Claimant's challenges, the Commissioner asserts that, although Claimant purports to raise two issues, the only specific error which he articulates is that the ALJ did not tender interrogatories to certain medical sources. (ECF No. 7 at 8). According to the Commissioner, the ALJ was not obligated to further develop the record because there was sufficient evidence to assess Claimant's physical and mental limitations, including relevant treatment notes, two mental status examination reports, an internal medicine examination report, and non-examining expert opinions. (*Id.* at 9).

## V.    Relevant Evidence

The undersigned has reviewed all of the evidence before the Court. Claimant's arguments only reference his tinnitus, major depressive disorder, somatic symptom disorder, adjustment disorder, and panic disorder. (ECF No. 6 at 4-5). Therefore, the summary of the evidence is confined to those impairments.

### A. Treatment Records

On August 17, 2017, Claimant presented to his primary care physician, Dr. Whitmore. Claimant felt better after taking Celexa, which Dr. Whitmore prescribed at Claimant's last appointment to treat mild recurrent depression. (Tr. at 469). Claimant stated that, although he felt better on the medication, he thought that he might need a higher dose, and Dr. Whitmore increased the dosage accordingly. (Tr. at 469-70). Claimant also reported suffering from tinnitus, noting that he previously worked in loud environments. (Tr. at 469). Dr. Whitmore diagnosed Claimant with tinnitus and referred him to an ear, nose, and throat specialist. (Tr. at 470).

Claimant failed to appear for his appointment at Valley Health Ear Nose and Throat. (Tr. at 468). However, Dr. Whitmore recorded on February 15, 2018 that Claimant continued to do well on Celexa for his mild depression. (Tr. at 464). Dr. Whitmore assessed Claimant's depression as mild and prescribed Celexa on June 21, 2018. (Tr. at 419). In June 2018, Claimant had increased back and leg symptoms after playing corn hole and mowing the grass. (Tr. at 375). Dr. Whitmore referred Claimant to neurosurgeon, Dwight Saulle, M.D., who examined Claimant on July 10, 2018. (Tr. at 400). During that examination, Claimant was pleasant, alert, well-groomed, fully oriented, and in no acute distress. (*Id.*). His memory was intact; he followed commands briskly; his speech was fluent with appropriate vocabulary; and he was aware of current

events and past history. (*Id.*).

### B. Evaluations and Opinions

On March 7, 2016, consultative psychologist, Ms. Null, performed an Adult Mental Status Examination of Claimant. Claimant explained that he was previously awarded disability benefits, but he went off of disability and returned to work. (Tr. at 311). Claimant noted that he worked as a certified millwright until November 2015, but he was unable to fulfill his duties because he could not stand for very long, and he was again seeking disability benefits. (Tr. at 311, 312). Claimant stated that he was also previously self-employed as a landscaper. (Tr. at 312). He was required to read and write, as well as operate lawn care equipment and hand tools, for his prior jobs. (*Id.*). Claimant appeared for the examination casually dressed and properly groomed with adequate hygiene. (*Id.*). Ms. Null noted that Claimant had some difficulty with hearing, and she often had to repeat questions. (*Id.*). The primary focus of clinical attention was Claimant's chronic pain, and Claimant identified that he was not receiving any specialized mental health treatment. (Tr. at 311). His reported activities included talking on the telephone daily, visiting family often, shopping in the grocery store weekly, running errands monthly, eating out for special events, paying bills and managing finances independently, attending church services for special events and on holidays, and performing household chores. (Tr. at 313). On examination, Claimant's concentration was mildly deficient based on his ability to repeat digits, and his social functioning was mildly deficient based on observation during the examination. (Tr. at 312-13). However, Claimant's attitude/behavior, speech, orientation, mood, affect, thought content and processes, perception, judgment, insight, psychomotor behavior, memory, persistence, and pace were all within normal limits. (*Id.*). Ms. Null diagnosed

9

Claimant with somatic symptom disorder with persistent pain and adjustment disorder with mixed anxiety and depressed mood. (Tr. at 313).

On February 22, 2017, Dr. Beard performed an Internal Medicine Examination of Claimant. Claimant's chief complaint was pain in his spine and right knee. (Tr. at 327). Claimant also reported hearing loss. (Tr. at 329). Dr. Beard recorded that Claimant appeared to require mildly elevated conversational volume and occasional repeats due to apparent hearing difficulty, but he did not use hearing aids and his speech was normal. (Tr. at 330). Dr. Beard diagnosed Claimant with hearing loss and stated that it "could" affect Claimant's ability to communicate in the workplace. (Tr. at 338).

On the same date, Ms. Null performed another mental status examination of Claimant. Claimant again appeared for the examination casually dressed and properly groomed with adequate hygiene. (Tr. at 323). He still had some difficulty with hearing. (*Id.*). The primary focus of clinical attention was again Claimant's chronic pain, and Claimant was still not receiving any formal mental health treatment. (Tr. at 322). His reported activities included shopping in the grocery, running errands, eating out, visiting family, talking on the telephone, paying bills and managing finances independently, attending doctor appointments, and performing household chores. (Tr. at 324). He rarely went to the movies or shopped in the mall, exercised "a little bit," and occasionally went to church. (*Id.*). He had ten close friends, went on vacation eight months earlier, and hunted and fished the prior Spring. (*Id.*).

On examination, Claimant's attitude/behavior, speech, orientation, mood, affect, thought content and processes, perception, judgment, insight, psychomotor behavior, memory, persistence, and pace were all within normal limits. (Tr. at 323-24). However, this time, his concentration was also grossly intact. (Tr. at 324). Ms. Null again

diagnosed Claimant with somatic symptom disorder with persistent pain and adjustment disorder with mixed anxiety and depressed mood, but she additionally diagnosed him with panic disorder based on his reported panic attacks. (Tr. at 324).

On March 2, 2017, Jeff Boggess, Ph.D., performed a Psychiatric Review Technique based upon Claimant's medical records. He assessed that Claimant had non-severe mental impairments that imposed only mild functional limitations. (Tr. at 95-96). Dr. Boggess noted that Claimant received no psychological treatment during the relevant period. (Tr. at 96). Dr. Boggess further explained that Ms. Null diagnosed Claimant with mental impairments based on Claimant's self-report, but his mental status examinations showed no more than mild concentration and social deficits. (*Id.*).

On March 15, 2017, James B. Smith, M.D., assessed Claimant's physical RFC based upon his review of Claimant's records. Dr. Smith opined that Claimant could perform work at the light exertional level with occasional postural activities, except that Claimant could not climb ladders, ropes, or scaffolds. (Tr. at 98). In addition, Dr. Smith assessed that Claimant should avoid concentrated exposure to extreme cold, wetness, noise, vibration, and hazards. (Tr. at 99). Dr. Smith remarked that Claimant "did have some decreased hearing" during his consultative examination, but Dr. Beard was able to communicate with Claimant using only a mildly elevated tone, and Claimant was able to converse and provide his medical history. (*Id.*).

### C. Claimant's Statements

Claimant testified during his administrative hearing on August 21, 2018 that he lived with his parents, who were around 80 years old, and his sister formerly lived with them, but she recently moved in with her boyfriend. (Tr. at 44, 48). Claimant stated that he could not work due to back issues, and he also suffered from depression and panic

attacks. (Tr. at 45, 48). Claimant related that his family doctor prescribed Celexa for his mental impairments, which "helped some." (Tr. at 45-46, 48-49). His daily activities included some household chores such as cutting the grass. (Tr. at 48).

## VI.    **Standard of Review**

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson*, the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This Court is not charged with conducting a *de novo* review of the evidence. Instead, the Court's function is to scrutinize the record and determine whether it is adequate to support the conclusion of the Commissioner. *Hays*, 907 F.2d at 1456. When conducting this review, the Court does not re-weigh evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001) (citing *Hays*, 907 F.2d at 1456)). Moreover, "[t]he fact that the record as a whole might support an inconsistent conclusion is immaterial, for the language of § 205(g) ... requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" *Blalock*, 483 F.2d at 775 (citations omitted). Thus, the relevant question for the Court is "not whether the claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson*

12

*v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig*, 76 F.3d at 589).

**VII.  Discussion**

### A. *Non-severe Impairments*

Claimant argues that the ALJ erred in concluding that his tinnitus and mental impairments were non-severe. At the second step of the sequential evaluation process, the ALJ concludes whether the claimant has an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is considered "severe" if it significantly limits a claimant's ability to do work-related activities. 20 C.F.R. §§ 404.1522(a), 416.922(a); SSR 96-3p, 1996 WL 374181, at *1. "[A]n impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3p, 1996 WL 374181, at *1 (citing SSR 85-28, 1985 WL 56856). As relevant to the instant matter, basic work activities include the claimant's capacity to hear; understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting. 20 C.F.R. §§ 404.1522(b), 416.921(b).

As discussed, when a claimant alleges a mental impairment, the ALJ must apply the special technique at step two of the analysis. If the ALJ determines that the claimant has a medically determinable mental impairment, the ALJ rates the degree of functional limitation in four broad categories, known as the "paragraph B" criteria, which include: (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(c), 416.920a(c). A rating of "none" or "mild" in the

foregoing criteria will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).

Importantly, the claimant bears the burden of proving that an impairment is severe, *Grant v. Schweiker,* 699 F.2d 189, 191 (4th Cir. 1983), and does this by producing medical evidence establishing the condition and its effect on the claimant's ability to work. *Williamson v. Barnhart,* 350 F.3d 1097, 1100 (10th Cir. 2003). The mere presence of a condition or ailment is not enough to demonstrate the existence of a severe impairment. Moreover, to qualify as a severe impairment under step two, the impairment must have lasted, or be expected to last, for a continuous period of at least twelve months and must not be controlled by treatment, such as medication. *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986). If the ALJ determines that the claimant does not have a severe impairment or combination of impairments, a finding of not disabled is made at step two, and the sequential process comes to an end. On the other hand, if the claimant has at least one impairment that is deemed severe, the process moves on to the third step. "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert,* 482 U.S. 137, 153-54 (1987)); *see also Felton–Miller v. Astrue,* 459 F. App'x 226, 230 (4th Cir. 2011) ("Step two of the sequential evaluation is a threshold question with a de minimis severity requirement.").

### 1. Tinnitus

In this case, the ALJ considered that Dr. Whitmore diagnosed Claimant with tinnitus, but the ALJ noted that Claimant received little treatment for the condition. (Tr. at 21). The ALJ cited Dr. Beard's finding that Claimant only required mildly elevated

conversational volume and occasional repeats to account for his difficulty hearing. (*Id*.). Ultimately, the ALJ concluded that there was no evidence that Claimant's tinnitus significantly limited his ability to perform basic work activities. Thus, the ALJ found that the impairment was non-severe. (*Id*.). However, the ALJ found that Claimant had other severe impairments and proceeded with the sequential evaluation. The ALJ specifically considered Claimant's ability to hear in the RFC analysis. He again noted Dr. Beard's findings that Claimant only required mildly elevated conversational volume and occasional repeats. (Tr. at 26-27). The ALJ gave great weight to the opinion of Dr. Smith, who concluded that Claimant could perform a range of light work that avoided concentrated exposure to noise, because the ALJ found Dr. Smith's assessment to be consistent with the evidence. (Tr. at 28).

The ALJ's above conclusions are well supported by the record. Claimant's hearing difficulties are mentioned only a few times in the evidence before the Court. In March 2016, Ms. Null recorded during Claimant's mental status examination that Claimant had "some difficulty" with hearing and she often had to repeat questions. (Tr. at 312). Similarly, Dr. Beard noted in the February 2017 internal medicine examination report that Claimant appeared to require mildly elevated conversational volume and occasional repeats due to apparent hearing difficulty, but Claimant did not use hearing aids and his speech was normal. (Tr. at 330). Dr. Beard diagnosed Claimant with hearing loss and stated that it "could" affect Claimant's ability to communicate in the workplace. (Tr. at 338). In terms of treatment for the condition, in August 2017, Claimant complained of tinnitus, and Dr. Whitmore referred him to an ear, nose, and throat specialist. (Tr. at 469-70). However, Claimant did not appear for his appointment with the specialist, and his subsequent visits with Dr. Whitmore focused on other impairments with no mention

of hearing difficulties, diagnoses, or treatment. (Tr. at 419, 464, 468).

The non-examining state agency physician, Dr. Smith, concluded that Claimant's hearing loss was a severe impairment. (Tr. at 95). However, the only RFC limitation that Dr. Smith assessed that could fairly be attributed to the condition was that Claimant should avoid concentrated exposure to noise. (Tr. at 99). The ALJ gave great weight to Dr. Smith's assessment and included such restriction in the RFC assessment. (Tr. at 24, 28).

Therefore, while Claimant may disagree with the ALJ's findings regarding the severity of his hearing condition, Claimant does not point to any evidence which the ALJ failed to consider, or any misapplication of the legal standards in the decision. Rather, Claimant simply concludes, without any meaningful explanation or basis, that the ALJ erred in finding Claimant's tinnitus to be non-severe. As shown above, the ALJ considered the relevant evidence and articulated a well-reasoned step two analysis. Moreover, the ALJ proceeded with the sequential evaluation and considered Claimant's hearing impairment in the RFC analysis, including a limitation that Claimant should have no concentrated exposure to noise. There is no opinion evidence in the record suggesting any greater RFC restrictions. As such, rather than pointing to specific errors in the ALJ's analysis that the Court should consider, Claimant is asking the Court to reexamine the medical evidence and reach different conclusions than the ALJ, which is not the Court's role in reviewing the Commissioner's decision. The Court must uphold the Commissioner's decision if it is supported by more than a scintilla of evidence. It is not the province of the Court under 42 U.S.C. § 405(g) to assess the severity of a claimant's impairments. Where, as here, the ALJ considered the evidence, provided logical reasons for his conclusions, applied the correct legal standards, and there is more

16

than a scintilla of evidence to support the ALJ's findings, the Court must affirm the Commissioner's decision. Therefore, the undersigned **FINDS** that the ALJ's step two analysis of Claimant's hearing impairment is supported by substantial evidence.

### 2. Mental Impairments

Claimant also contends that the ALJ erred in finding that his major depressive disorder, somatic symptom disorder, adjustment disorder, and panic disorder were non-severe impairments. The ALJ found at step two of the analysis that Claimant's depression and somatic symptom and adjustment disorders were medically determinable impairments. (Tr. at 22). Thus, the ALJ applied the special technique to evaluate whether the mental impairments caused more than a minimal limitation in Claimant's ability to perform basic mental work activities. (Tr. at 22-23).

In the first functional area of understanding, remembering, or applying information, the ALJ found that Claimant was mildly limited. The ALJ noted that, although Claimant stated that he had trouble understanding things, Claimant shopped for groceries, paid bills, handled his finances, performed skilled work in the past, and had intact memory capability during his consultative examination. (Tr. at 22-23). The ALJ likewise concluded that Claimant was only mildly limited in the second functional area of interacting with others. (Tr. at 23). The ALJ cited Claimant's testimony that he suffered from depression and anxiety, but he shopped at the grocery, ate at dining establishments, visited family and friends, talked on the telephone, and attended doctor appointments and church services. (*Id.*). In the third functional area of concentration, persistence, or pace, the ALJ found that Claimant was also mildly limited. (*Id.*). The ALJ noted that, despite Claimant's allegation that he had trouble concentrating and completing tasks, he exhibited intact persistence, pace, and concentration during the

consultative examinations. (*Id.*). Finally, in the fourth functional area of adapting or managing oneself, the ALJ assessed that Claimant had no limitation. (*Id.*). The ALJ noted that Claimant performed personal care, cooked, did laundry, washed dishes, swept, shopped, mowed the lawn, paid bills, and managed finances. (*Id.*).

The ALJ cited that Claimant's primary care physician, Dr. Whitmore, diagnosed Claimant with mild recurrent depression, and Claimant reported improvement from Celexa. (*Id.*). The ALJ further considered that the consultative psychologist, Ms. Null, diagnosed Claimant with somatic symptom disorder, adjustment disorder, and panic disorder. (*Id.*). However, the ALJ cited Ms. Null's normal mental status examination findings. (*Id.*). The ALJ did not find any indication that the somatic symptom and adjustment disorders lasted for a continuous 12 months, explaining that Claimant was never treated for a panic disorder, nor did he report panic attacks to his physician. (*Id.*). The ALJ gave great weight to the opinion of the state agency psychologist, who reviewed Claimant's records, including the consultative examinations, and concluded that Claimant did not have any severe mental impairments. (*Id.*). The ALJ found such opinion to be consistent with the mild examination findings and Claimant's minimal treatment for mental disorders. (*Id.*). In sum, the ALJ determined that Claimant's mental impairments, singly or in combination, did not cause more than minimal limitation in his ability to perform basic mental work activities and were therefore non-severe. (*Id.*).

The ALJ's above findings are supported by substantial evidence. Claimant only received psychological treatment from his primary care physician during the relevant period. Dr. Whitmore diagnosed Claimant with mild depression, prescribed Celexa, and recorded that Claimant did well on the medication. (Tr. at 419, 464, 469). Claimant's

other mental impairments were diagnosed by consultative psychologist, Ms. Null, who examined Claimant on only two occasions in March 2016 and February 2017. As the ALJ explained, Ms. Null noted normal findings during those consultative examinations. (Tr. at 312-13, 323-24). In fact, during the February 2017 examination, Claimant's attitude/behavior, speech, orientation, mood, affect, thought content and processes, perception, judgment, insight, psychomotor behavior, memory, concentration, persistence, and pace were all intact. (Tr. at 323-24). There were no abnormalities whatsoever in his mental status examination. (*Id.*).

In addition to the above conservative treatment and mild examination findings, Claimant worked as a certified millwright, a skilled position, for over a year after his alleged onset of disability, and he maintained a variety of activities, including grocery shopping, running errands, eating out, visiting family, talking on the telephone, paying bills and managing finances independently, attending doctor appointments, performing household chores, and occasionally going to the movies or mall, exercising, and going to church. (Tr. at 44, 52, 324). Claimant maintained ten close friends, went on vacation, and hunted and fished after his alleged onset of disability. (Tr. at 324). Furthermore, Dr. Boggess, the state agency psychologist, reviewed Claimant's records and concluded that Claimant did not have any severe mental impairments. (Tr. at 95-96).

Based on the above, the ALJ's conclusions that Claimant had mild mental functional limitations and non-severe mental impairments is well supported by Claimant's conservative treatment, mental status examination findings, daily activities, and the opinion evidence offered in this matter. Therefore, the undersigned **FINDS** that the ALJ's step two analysis of Claimant's mental impairments is supported by substantial evidence.

### B. Duty to Develop the Record

Claimant next asserts that the ALJ should have tendered interrogatories to the treating physician and the examining medical sources regarding Claimant's physical and mental limitations. An ALJ's duty is to ensure that the record contains sufficient evidence upon which the ALJ can make an informed decision. *Ingram v. Commissioner of Social Security Administration,* 496 F.3d 1253, 1269 (11th Cir. 2007); *see also Weise v. Astrue,* No. 1:08-cv-00271, 2009 WL 3248086 (S.D.W. Va. Sept. 30, 2009). Consequently, when examining the record to determine if it was adequate to support a reasoned administrative decision, the Court looks for evidentiary gaps that resulted in "unfairness or clear prejudice" to Claimant. *Marsh v. Harris,* 632 F.2d 296, 300 (4th Cir. 1980).

In this case, the Transcript of the Administrative Proceedings contained the records of Claimant's clinical treatment; independent physical and mental medicine examinations; opinions from non-examining medical sources; as well as Claimant's adult function reports, pain questionnaires, and testimony during Claimant's administrative hearing. It is unclear what further information Claimant contends the ALJ should have developed. Claimant articulates a legal standard related to this challenge, but he fails to provide a factual basis showing the applicability of that standard to the present case. Claimant does not identify any inadequacies or gaps in the record that the ALJ should have developed. The undersigned **FINDS** that the record was sufficient for the ALJ to make an informed decision and that there were not inadequacies or evidentiary gaps in the record for which the ALJ was obligated to develop the evidence.

## VIII.  <u>Recommendations for Disposition</u>

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 6); **GRANT** the Commissioner's request for judgment on the pleadings, (ECF No. 7); **AFFIRM** the decision of the Commissioner; **DISMISS** this action, with prejudice, and remove it from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Thomas v. Arn*, 474 U.S. 140 (1985); *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED**: June 29, 2020

Cheryl A. Eifert
United States Magistrate Judge